**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Colony Insurance Company, | No. CV-21-01964-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| JK Farm Labor LLC, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Colony Insurance Company's ("Colony") Motion for Summary Judgment (Doc. 79) against Defendants JK Farm Labor, LLC ("JK"), Edgardo Gerardo-Acosta ("Acosta"), Cesar Salcedo ("Salcedo"), and RDO Equipment Co. ("RDO") (collectively, "Defendants"). The Motion has been fully briefed. For the following reasons, the Court **grants** Plaintiff's Motion.

**I.    BACKGROUND**

This case arises out of a vehicular accident and concerns the applicability of an insurance policy sub-limit under Arizona's reasonable expectations doctrine.

**A. The Insurance Policy**

At issue in this case is a "Commercial Farm & Ranch" insurance policy issued by Plaintiff to JK, a provider of farm labor services to agricultural clients. (Doc. 80 at 2 ¶ 1.) JK obtained the policy in 2017. (Doc. 80 ¶ 2–3.) To obtain the policy, JK submitted an application (the "Application") to its insurance agent, Alliant Insurance Services ("Alliant"), which Alliant submitted to Risk Placement Services, Inc. ("RPS"), which RPS

1 then submitted to Plaintiff. (Doc. 80 at 2¶ ¶ 2–3, 5 ¶¶ 16–18.) Plaintiff accepted the Application and provided JK with a quote for a farm and ranch liability insurance policy (the "Quote"). (Doc. 80 at 5 ¶ 20.) The Quote was offered from Plaintiff to RPS, from RPS to Alliant, and then from Alliant to JK. (Doc. 80 at 2 ¶¶ 6–7.)

The Quote, under "Schedule of Classifications," listed "U923, Sub-Limited Liability Coverage for Farm Machinery or Equipment Used on Public Roads" (the "Endorsement"). (Doc. 80 at 5 ¶ 21.) The Quote also listed the Endorsement's title under "Forms List, Forms Applicable." (Doc. 80 at 5–6 ¶ 22.) The parties dispute whether the Quote included a sample copy of the Endorsement. (Doc. 80 at 6 ¶ 23; Doc. 84 at 5 ¶ 23.)

Colony then issued JK a policy consistent with the Quote and which contained the Endorsement. (Doc. 80 at 6 ¶ 27.) JK renewed the policy in 2018 and 2019; the Endorsement was in each renewal. (Doc. 80 at 2 ¶ 8, 6 ¶¶ 28, 30.) This case concerns the policy in effect in 2019 (the "Policy"). The Policy provided $1 million in coverage for bodily injury and property damage. (Doc. 80-1 at 100.) The Endorsement set a $25,000 sub-limit on available coverage for "bodily injury and property damage liability that the 'insured' becomes legally obligated to pay for damages because of 'bodily injury' or 'property damage' arising out of the operation of owned or non-owned farm machinery or equipment on public roads by the 'insured', 'farm employee' or anyone else authorized by the 'insured'." (Doc. 79 at 9.)

**B. The Accident**

In 2019, Salcedo was driving a truck when he was struck on a public road by Acosta, a JK employee, who was driving a tractor. (Doc. 79 at 8.) JK supplied Acosta to RDO to drive one of its tractors. (Doc. 79 at 8; Doc. 80 at 2 ¶ 1.) Salcedo, sustaining serious injuries, sued Acosta, JK, and RDO in state court. (Doc. 79 at 8.) Colony agreed to defend JK and Acosta under a reservation of rights until the cost of defense exceeded $25,000, the value of the Endorsement. (Doc. 79 at 8; Doc. 80 at 11 ¶ 78.) Once the cost of defense exceeded $25,000, Colony brought the present lawsuit, seeking declaratory relief that the Endorsement is valid and enforceable and that JK must reimburse Colony for any costs it

incurred over $25,000. (Doc. 1 at 8–9.) Each party agrees "that under the plain language of the terms of the [Endorsement] there would be $25,000.00 in coverage available to JK Farm for the collision." (Doc. 83 at 2; Doc. 88 at 2.) The parties dispute whether the Endorsement is enforceable under Arizona's reasonable expectations doctrine. (Doc. 83 at 2; Doc 79 at 11.)

## II. LEGAL STANDARD

Summary judgment is appropriate in circumstances where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of a case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes are genuine when the evidence could allow a reasonable jury to find in favor of the nonmoving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by showing "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Additionally, the Court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in the nonmovant's favor. *Anderson*, 477 U.S. at 255. Additionally, the Court does not make credibility determinations or weigh the evidence. *Id.* The determination of whether a given factual dispute requires submission to a jury is guided by the substantive evidentiary standards that apply to the case. *Id.*

The burden initially falls on the movant to demonstrate the basis for a motion for summary judgment and "identify[] those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S.

at 323. If this initial burden is not met, the nonmovant does not need to produce anything even if they would have the ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). However, if the initial burden is met by the movant, then the nonmovant has the burden to establish that there is a genuine issue of material fact. *Id.* at 1103. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Zenith Radio Corp.*, 475 U.S. at 586. Bare assertions alone do not create a material issue of fact, and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

## III. DISCUSSION

In Arizona, "contracts are generally enforced as written." *Kalway v. Calabria Ranch HOA, LLC*, 506 P.3d 18, 24 (Ariz. 2022). However, "[i]t is well established that a contracting party's reasonable expectations may affect the enforceability of non-negotiated terms in a standardized agreement." *Averett v. Farmers Ins. Co. of Ariz.*, 869 P.2d 505, 506 (Ariz. 1994). This is true even when the terms are unambiguous. *See Gordinier v. Aetna Cas. & Sur. Co.*, 742 P.2d 277, 283 (Ariz. 1987).

A term is beyond the range of reasonable expectations when the insurer "has reason to believe that the party manifesting such assent would not do so if he knew that the writing contained a particular term." *Cornell v. Desert Fin. Credit Union*, 524 P.3d 1133, 1138 (Ariz. 2023) (quoting *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 396 (Ariz. 1984)). Accordingly, the Court must decide whether Colony had reason to believe that JK would not have assented to the Policy had it known about the Endorsement.

"Arizona courts will not enforce even unambiguous boilerplate terms in standardized insurance contracts in a *limited* variety of situations." *Gordinier*, 742 P.2d at 283 (emphasis in original). Those situations are:
> 1. Where the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in light of the objective, reasonable

expectations of the average insured;

2. Where the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage;

3. Where some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured;

4. Where some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy.

*Id.* (citations omitted). The Court assesses the applicability of each situation in turn. However, the Court primarily focuses on the second and fourth situations as Defendants only argue that "reasonable jurors may find that both #2 and #4 apply." (Doc. 83 at 10.)

Ultimately, insureds bear the burden of proving the applicability of the reasonable expectations doctrine at trial. *Twin City Fire Ins. Co. v. DanceIt! Studio LLC*, 714 F. Supp. 3d 1143, 1152 (D. Ariz. 2024). Accordingly, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* (quoting *Celotex Corp*., 477 U.S. at 324)).

**A. Situation 1**

Under the first situation, the Endorsement is unenforceable if it "cannot be understood by the reasonably intelligent consumer who might check on his or her rights, [interpreted] in light of the objective, reasonable expectations of the average insured." *Gordinier*, 742 P.2d at 283. As noted, "Defendants do not dispute that under the plain language of the terms of the [E]ndorsement, there would be $25,000.00 in coverage available to JK." (Doc. 83 at 2.) The Court also finds the Endorsement to be clear and unambiguous. Accordingly, the Court finds that a reasonably intelligent consumer who read the Endorsement would understand that the Policy limited the amount of coverage for tractor accidents on a public road.

## B. Situation 2

Under the second situation, the Endorsement is unenforceable if "the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage." *Gordinier*, 742 P.2d at 284S. This situation "requires notice *and* that the provision be 'unusual or unexpected, or one that emasculates apparent coverage.'" *Evanston Ins. Co. v. Murphy*, 544 F. Supp. 3d 879. 888 (D. Ariz. 2021) (emphasis in original) (quoting *Gordinier*, 742 P.2d at 277.) Neither requirement is satisfied.

### 1. *Adequate Notice*

Defendants argue that JK did not receive notice of the Endorsement because: (1) while the Quote indicated that the Endorsement applied to the Policy, the Quote "did not list a sub-limit for farm machinery operated on a public road"; (2) Jose Lopez, JK's principal, was neither provided with a copy of the Endorsement with the Quote when the Policy was originally obtained in 2017, nor was the Endorsement explained to him; (3) the electronic version of the Policy provided a link to the Endorsement, which only leads to a "page with no sub-limits expressly indicated on it"; (4) the proposal for each renewal of the Policy contained the Endorsement but "were stamped with a watermark that said 'Sample only—Refer to policy for accurate coverage terms.'" (Doc. 83 at 10–12).[1] These arguments are unavailing.

"An insurer gives adequate notice of a policy's clear and unambiguous terms if it gives a copy of the policy to the insured and takes reasonable steps to make sure any exclusions or limitations are made apparent to the insured." *Tucker v. Scottsdale Indem. Co.*, No. 1 CA-CV 09-0732, 2010 WL 5313753, at *5 (Ariz. Ct. App. Dec. 21, 2010) (citing *Averett*, 869 P.2d at 508). This burden is met where "[t]he policy language is clear, unambiguous, and objectively reasonable; the exclusion is not lengthy, confusing, complex, or buried in the policy." *Am. Fam. Mut. Ins. Co. v. White*, 65 P.3d 449, 456 (Ariz.

---

[1] Defendants also argue that the Certificate of Liability Insurance (the "CLI") did not provide the sub-limit for the Endorsement. (Doc. 83 at 8.) However, the CLI is provided by Alliant, not Plaintiff. Regardless, the Court's discussion regarding the Quote equally applies to the CLI.

- 6 -

Ct. App. 2003). As made clear, Defendants do not dispute the Endorsement's plain meaning. (Doc. 83 at 2.) Accordingly, the Court only assesses whether JK had adequate notice of the Endorsement in the first instance.

To start, it is undisputed that the Quote identified that the Endorsement would apply to the Policy. (Doc. 80 at 5–6 ¶¶ 20–22.) Defendants merely contest that JK did not receive a copy of the Endorsement with the Quote. (Doc. 84 at 5–6 ¶¶ 24–25.) However, Defendants do not contest that JK received a complete copy of the Policy, which was identical to its 2017 and 2018 predecessors. (Doc. 80 at 6 ¶¶ 27, 30, 8 ¶ 52.) Importantly, each of the three policies contained the Endorsement which remained unchanged and listed the same sub-limit each year. (Doc. 80 at 2 ¶ 9, 6 ¶ 27, 28, 30, 7 ¶ 36.)[2]

This does not amount to a situation in which the insured "never had an opportunity to read the term, or [that] it is illegible or otherwise hidden from view." *Evanston*, 544 F. Supp. 3d at 887–88 (alteration in original) (quoting *Darner*, 682 P.2d at 397)). Even if the Quote did not include a copy of the Endorsement, the Quote put JK on notice that the Endorsement exists and would apply to the Policy. On that point, the title of the Endorsement plainly identifies the effect the Endorsement has on the Policy: "Sub-Limited Liability Coverage for Farm Machinery or Equipment Used on Public Roads." In short, even if the Quote did not provide a copy of the Endorsement, the Quote cannot be read to suggest that the Endorsement did not exist or otherwise obfuscated the effect the Endorsement had on the Policy.

However, Defendant's argument regarding the Quote is a red herring. Even if the Quote did not include the Endorsement, that fact alone does not establish that JK did not otherwise receive notice of the Endorsement. The accident occurred in 2019, by which time JK had received *three* identical copies of the Policy and the Endorsement. Furthermore, the Policy does not hide either the existence or the terms of the Endorsement.

---

[2] Plaintiff alleges that "The 2018-2019 renewal policy contained the same Sub-Limit Endorsement as the 2017-2018 policy." (Doc. 80 at 6 ¶ 30.) Defendants object to this allegation, responding that "the Sub-Limit Endorsement sample was not provided with the 2017 Insurance Quotation to JK Farm." (Doc. 84 at 6–7 ¶ 30.) Defendants' reply is nonresponsive as Plaintiff discusses the Policy itself, not a quote.

1    *See Tucker*, 2010 WL 5313753, at *5 ("To determine whether the exclusion is apparent,
2    factors such as typeface, size and location are relevant."). The Policy's "Schedule of Forms
3    and Endorsements" is one page, near the beginning of the Policy, and lists the
4    Endorsement's full title under "Forms Applicable–Farm and Ranch." (Doc. 80-1 at 90.)
5    As noted, the title of the Endorsement provides a relatively clear indication of the
6    Endorsement's effect on the Policy. Turning to the Endorsement itself, the top of the page
7    in all caps provides: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE
8    READ IT CAREFULLY." (Doc. 80-1 at 151.) The Endorsement's full title is then listed
9    in large, all caps, bold print. (Doc. 80-1 at 151.) The Endorsement then provides a $25,000
10   sub-limit and the already cited text regarding the applicability of the Endorsement.

11   Still, Defendants argue that "[h]ad Mr. Lopez picked up a physical copy policy and
12   leafed through it, he would have needed to go through 65 of its 76 pages to find the
13   sub-limited endorsement." (Doc 83 at 11–12.) This fact, standing alone, is insufficient to
14   suggest JK lacked notice of the Endorsement. The Court acknowledges that the location
15   of a material term is relevant to determining its apparency. *See Tucker*, 2010 WL 5313753,
16   at *5. However, such doctrine is not implicated merely because a material term is near the
17   end of a policy if the term is otherwise made clear in the policy itself and other supporting
18   documents. Additionally, the Policy clear lists the Endorsement under "Forms Applicable"
19   near the beginning of the Policy. (Doc. 80-1 at 89.) Accordingly, the Court finds that JK
20   had the opportunity to read the Endorsement, which was adequately made available to it.

21       2. *Effect on Coverage*

22   Because the Court finds that JK received adequate notice of the Endorsement, the
23   Court need not continue to examine whether the Endorsement was unusual, unexpected, or
24   emasculated apparent coverage. *See Evanston*, 544 F. Supp. 3d at 888. Still, Defendants
25   fail to raise an issue of triable fact. Defendants argue that: (1) Lopez testified he would not
26   have bought the Policy had the Endorsement been explained to him; and (2) the
27   Endorsement would not have applied if JK had received the "commercial general liability
28   policy" it applied for, "not the commercial farm and ranch policy" it received. (Doc. 83

at 12.) These arguments can be quickly dispensed.

Lopez's bald assertion that he would not have bought the Policy is insufficient to prove that the Endorsement is unusual, unexpected, or emasculates coverage. The Arizona Supreme Court has expressly noted that "the reasonable expectation concept must be limited by something more than the fervent hope usually engendered by loss." *Darner*, 682 at 395. Defendants have not identified any facts creating a triable issue as to whether JK reasonably expected to receive full coverage for the tractor accident.

Furthermore, the Application does not demonstrate that the Endorsement vitiated JK's reasonable expectations. Notwithstanding the substance of the Application, the Quote was clearly for a "Commercial Farm & Ranch Policy" and further provided that the Endorsement would apply. (Doc. 80-1 at 201.) JK decided to purchase such insurance on three separate occasions. Finally, Defendants otherwise fail to point to any facts demonstrating that Plaintiff had any reason to believe that JK would not have purchased the Policy had it known about the Endorsement, or that JK otherwise expected or needed full coverage for farm machinery operated on public roads. *See Twin City*, 714 F. Supp. 3d at 1151.

### C. Situations 3 and 4

Under the third and fourth situations, the Endorsement is unenforceable if there is "some activity which can be reasonably attributed to the insurer" that would either: (1) "create an objective impression of coverage in the mind of a reasonable insured"; or (2) "induce[] a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy." *Gordinier*, 742 P.2d at 284 . Neither situation is present here.

"The 'impression or expectation of coverage must be based on actions reasonably attributable to the insurer, not the non-agent broker through which the insured procured the [policy].'" *Evanston*, 544 F. Supp. 3d at 889 (alteration in original) (quoting *Colony Ins. Co. v. Est. of Anderson ex rel. Johnson*, No. 1 CA-CV 14-0819, 2016 WL 796983, at *6 (Ariz. Ct. App. Mar. 1, 2016)). Here, it is undisputed that Colony and JK never had any

direct contact and only communicated through intermediaries. (Doc. 80 at 2 ¶¶ 5–7.) Additionally, Defendants fail to point to any statements made, or actions taken, by Plaintiff which suggest that JK was entitled to more than $25,000 in coverage for the accident.

Nonetheless, Defendants contend that Plaintiff induced JK into believing that there was coverage up to $1 million. (Doc. 83 at 12.) Defendants again argue that JK would have received more coverage had it "received the commercial general liability policy it had applied for." (Doc. 83 at 13.) This argument is unavailing because Defendants do not point to any word or deed by Plaintiff suggesting that JK would receive such a policy. It is undisputed that Plaintiff provided a quote for farm and ranch liability coverage, which JK accepted on three occasions. (Doc. 80 at 6 ¶ 20.)

Defendants also contend the Quote provided that JK "had [$1 million] in coverage for bodily injury and property damage" and that the Quote "did not list a sub-limit for farm machinery when operated on a public road." (Doc. 83 at 13.) Accepting as true that the Quote did not include the sub-limit for the Endorsement, Defendants argument lacks merit for the reasons previously discussed. At most, JK can argue that it lacked notice of the sub-limit at the time it received the Quote. However, the Quote otherwise made clear that the Endorsement would apply. Additionally, the Policy—which did include the sub-limit—made clear that the Endorsement would apply and JK received a copy of the Endorsement on at least three occasions after receiving the Quote and prior to the accident. (Doc. 80 at 6 ¶¶ 27–28, 30, 7 ¶ 36, 8 ¶ 52.) Defendants otherwise fail to identify any facts suggesting that Plaintiff (1) "create[d] an objective impression of coverage in the mind of a reasonable insured"; or (2) "induced [JK] to believe that [it] has coverage, although such coverage is expressly and unambiguously denied by the policy." *See Gordinier*, 742 P.2d at 284 .

### D. Defendants' Remaining Arguments

The Court also flags that Defendant's remaining arguments do not otherwise establish that JK had a reasonable expectation of $1 million in coverage for injuries stemming for farm machinery being operated on public roads. Defendant argues that a

- 10 -

1  reasonable jury could conclude that Plaintiff knew that JK used farm machinery on public
2  roads based on the Application, noting that JK was "engaged in weeding, thinning &
3  irrigation of row cops" and the "milking & tendering cows on dairy farms." (Doc. 83 at 9.)
4  This fact, even if true, does not otherwise defeat the fact that JK had notice of the
5  Endorsement and effectively agreed to its terms on three occasions.  Additionally, it is
6  unclear that JK's cursory explanation of its business in the Application is sufficient to have
7  impressed upon Plaintiff that JK expected a full $1 million in coverage for farm machinery
8  being operated on public roads.  While the Application might suggest that JK utilizes farm
9  machinery, the Application does not clearly suggest that JK utilized farm machinery on
10 public roads to such an extent that Plaintiff either knew, or that JK would reasonably
11 presume, that it would receive full coverage despite the Endorsement.

12 Defendants also argue that "no one ever explained the sub-limit endorsement to
13 [Lopez]." However, Defendants have not directed this Court to any authority which places
14 an affirmative obligation on insurers to explain its policies to insureds; especially where
15 the insured is a business entity with an insurance agent.

16 Ultimately, Defendants have "not produced evidence such that a reasonable jury
17 could return a verdict for [it] under any of the four strands of the . . . reasonable
18 expectations doctrine." *Evanston*, 544 F. Supp. 3d at 890 (quoting *Kruger v. USAA Cas.*
19 *Ins. Co.*, No. CV-11-113-PHX-GMS, 2012 WL 443715, at *5 (D. Ariz. Feb. 13, 2012)).
20 Defendants have failed to establish that JK had a reasonable expectation of $1 million in
21 coverage for the tractor accident.  Accordingly, Plaintiff is entitled to summary judgment
22 on its claims for declaratory relief.
23     …
24     …
25     …
26     …
27     …
28     …

IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** granting Plaintiff's Motion for Summary Judgement (Doc. 79).

Dated this 18th day of September, 2025.

_____
Honorable Susan M. Brnovich
United States District Judge