**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Colony Insurance Company, | No. CV-21-01964-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| JK Farm Labor LLC, et al., | |
| Defendants. | |

The Court now considers Cesar Salcedo's Motion to File an Amended Complaint (Doc. 121). The Motion is fully briefed. The Court **denies** the Motion for the following reasons.

## I.    BACKGROUND

The salient facts of this case are as follows. Colony issued a "Commercial Farm & Ranch" insurance policy (the "Policy") to JK Farm Labor, LLC ("JK Farm"). (Doc. 91 at 1.) JK Farm provides farm labor services to agricultural clients. (Doc. 91 at 1.) The Policy provided $1 million in coverage for bodily injury and property damage. (*Id.* at 2.) However, an endorsement to the Policy set a $25,000 sub-limit on available coverage for bodily injury and property damage liability related to the operation of farm machinery or equipment on public roads (the "Endorsement"). (*Id.*)

The Endorsement became a matter of controversy when Salcedo was struck by a tractor driven by a JK Farm employee. (*Id.*) Salcedo sued JK, among others, in state court. (*Id.*) Colony defended JK Farm under a reservation of rights until the cost of defense

exceeded $25,000.  (*Id.*)  Once the cost of defense exceeded that amount, Colony brought the present suit seeking declaratory relief that the Endorsement is valid and enforceable and that JK Farm must reimburse Colony for any costs incurred beyond the $25,000.  (*Id.* at 2–3.)

Colony's present action was consolidated with an action brought by Salcedo against Colony.  (Doc. 47.)  There, Salcedo sued Colony for breach of contract, bad faith, and producer malpractice.[1]  On September 18, 2025, the Court granted Colony's Motion for Summary Judgment, finding the Endorsement enforceable.  (Doc. 91 at 12.)  During a January 5, 2026 hearing, the Court clarified that Colony is entitled to their requested relief, and Salcedo's only remaining claim is for bad faith against Colony.  (Doc. 114).

During that hearing, Salcedo motioned for leave to amend his Complaint, which the Court denied without prejudice.  (*Id.*)  The Court ordered Salcedo to file a written motion. (*Id.*)  Salcedo did so, filing the present Motion and attached Proposed Amended Complaint ("PAC").  (Doc. 121.)

The PAC still asserts claims for breach of contract, bad faith, and producer malpractice. (Doc. 121-1.)  However, the PAC only amends the breach of contract and bad faith claims, leaving the producer malpractice claim as previously alleged.  The breach of contract claim is still predicated, in part, on the Endorsement being unenforceable pursuant to Arizona's reasonable expectations doctrine.  (*Id.* at 11.)  However, the PAC amends the breach of contract claim by additionally alleging that Colony breached the Policy by failing to pay $1,000 in medical payments coverage.  (*Id.* at 12–13.)  The PAC amends the bad faith claim by adding a litany of allegations pertaining to Colony's conduct towards

---

[1]  JK Farm assigned its claims against Colony to Salcedo via a "*Morris* Agreement." "*Morris* agreements typically come into play in liability actions when an insurer defends an insured under a reservation of rights."  *Centerpoint Mech. Lien Claims, LLC v. Commonwealth Land Title Ins. Co.*, 569 P.3d 796, 803 (Ariz. 2025).  "Under those circumstances, upon notice to the insurer and subject to court approval, the insured may settle the questions of liability and damages with a third-party plaintiff."  *Id.*  Such an "agreement will bind the insurer as to liability and the damages amount."  *Id.*  Assuming the agreement receives court approval, "the insurer may not litigate the fact and amount of the insured's liability, but it may contest coverage under the policy, because otherwise the insurer may be required to provide coverage the insured did not purchase."  *Id.*

Salcedo and JK. (*Id.* at 13–14.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15(a)(2) goes on to provide that the "court should freely give leave when justice so requires." Generally, "there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in original). However, "post-summary judgment amendments are disfavored." *Pacesetter Consulting LLC v. Kapreilian*, No. CV-19-00388-PHX-DWL, 2021 WL 3168471, at *23 (D. Ariz. July 27, 2021) (quoting 1 Gensler, *Federal Rules of Civil Procedure, Rules and Commentary, Rule 15*, 447 (2021)). In considering whether to grant leave to amend, the Court considers whether there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.    DISCUSSION

As a general matter, leave to amend is inappropriate to the extent the PAC rechallenges the propriety of the Endorsement. The PAC does not include any additional facts that suggest the Endorsement is unenforceable. In fact, the PAC reasserts the same facts the Court previously found were insufficient to establish that the Endorsement is inapplicable pursuant to Arizona's reasonable expectation doctrine. Accordingly, the Court will not grant Plaintiff leave to amend to reassert challenges to the Endorsement already found to be insufficient as a matter of law. *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal."). Again, the Court made clear on summary judgement, and during the January 5 hearing, that the Endorsement is enforceable. (Doc. 91 at 11, Doc 114.) Thus, the Court will only consider the PAC to the extent it amends the breach of contract and bad faith claims.

- 3 -

**A.  Breach of Contract Claim**

The PAC amends the breach of contract claim to additionally allege that Colony breached the Policy by failing to pay $1,000 worth of Cesar's medical expenses pursuant to Section J of the Policy.  (Doc. 121-1 at 12–13.)  While the Court is free to consider any number of factors in deciding whether to give leave to amend, "it is the consideration of prejudice to the opposing party that carries the greatest weight."  *Eminence*, 316 F.3d at 1052.  This amendment would be prejudicial because it would materially alter the nature of this litigation at the final hour.

The Court notes that Salcedo filed his Complaint over two years ago.  (Case 2:23-cv-01548-SMB Doc. 1.)  Moreover, discovery in this case is closed and trial is set less than two weeks from the date of this Order.  *See Underwood v. O'Reilly Auto Enters., LLC*, 342 F.R.D. 338, 343 (D. Nev. 2022) ("The existence of prejudice is generally mitigated where the case is still in the discovery stage, no trial date is pending, and no pretrial conference has occurred" (citation modified)).  Salcedo does not articulate why he waited over two years, after the conclusion of discovery and less than two weeks before trial, to add claims that ostensibly were known to him at the time he filed this suit.

These procedural details aside, Salcedo's proposed amendment "materially alter[s] the nature of the claims or theories already pled."  *Id.* at 344.  Until this point, Salcedo claims he was wrongfully deprived of $1 million in coverage based on the enforceability of the Endorsement.  In other words, Salcedo's entire case, up to this point, hinged on the enforceability of the Endorsement.  However, Salcedo now claims that he was wrongfully denied $1,000 in medical coverage under the Policy.  Until this point, Salcedo did not challenge Colony's alleged refusal to pay medical expenses pursuant to Section J of the Policy.  This allegation, or any intimation of it, is wholly absent from Salcedo's original Complaint.

Salcedo's arguments to the contrary are not convincing.  In short, Salcedo points to limited instances during discovery where the medical coverage issue was broached in a manner largely tangential to the central issue in this case—the enforceability of the

Endorsement.  However, even the discrete examples Salcedo cites do not compel this Court to grant leave to amend.  For example, Salcedo argues that Colony was on notice of his medical expense claim based on an August 20, 2024 deposition of Colony's Vice President of Claims and an expert report that contained 2 paragraphs discussing the medical coverage.  The Court is not convinced that a tangential issue raised in a deposition and expert report is sufficient to put Colony on notice and cure the prejudice of amending Salcedo's breach of contract weeks before trial.  Additionally, Salcedo offers no reason why he failed to amend his breach of contract claim during those intervening eighteen months.

Accordingly, the Court will not give Salcedo leave to amend his breach of contract claims.

**B.  Bad Faith Claim**

The Court now considers Salcedo's bad faith claim.  Originally, Salcedo alleged that Colony "breached their duty of good faith and fair dealing to JK Farm by failing to indemnify JK Farm regarding Cesar's claims against JK Farm."  (Case 2:23-cv-01548-SMB Doc. 1 at 8.)  The PAC additionally alleges that Colony "breached its duty of good faith and fair dealing by failing to":

Adequately communicate with JK Farm in a language that JK Farm can understand,

Adequately inform its insured of the status of the claim against it and its potential for excess exposure,

Inform its insured of the status of the available policy limits applicable to this matter since the $25,000.00 Endorsement was depleted by defense expenditures,

Pay Cesar the $1,000.00 policy limits available under section J,

Obtain financial information from its insured to determine JK Farm's ability to contribute to a settlement, . . .

Actively engage in negotiations to resolve Cesar's claim using financial information Colony Insurance Company should have obtained from its

insured,

. . . .

Conditioning payment due and owing to Cesar under Coverage J on his full release of all claims, and

Informing its insured that it would seek court costs and defense expenditures incurred in the defense of Cesar's claim only after the $25,000.00 Endorsement limit was exhausted and over a year had passed since the determination had been made that the Endorsement applied.

(Doc. 121-1 at 13–14.)  The Court will not give Salcedo leave to amend his bad faith claim.

The earlier prejudice analysis applies with equal force here.  Again, Salcedo's bad faith claim was originally predicated on Colony only paying the Endorsement's $25,000 sub-limit.  Again, the Complaint did not intimate that Salcedo's claim that Colony violated its duty to indemnify was based on anything other than this allegation.  Thus, the PAC's attempt to rejigger the bad faith claim to incorporate the $1,000 medical expense portion of the Policy is prejudicial for the reasons previously stated.

The Court again highlights that Salcedo, years after filing his original complaint and less than a month before trial, seeks to include additional allegations based on information ostensibly available to Salcedo even before he filed suit.  Even if some of the foregoing allegations are predicated on information made available during discovery, Salcedo does not offer any explanation for his delay in seeking to amend his Complaint.

That aside, Salcedo's allegations impermissibly alter the scope of his bad faith claim.  *See Underwood*, 342 F.R.D. at 344.  As noted, Salcedo predicated his bad faith claim solely on Colony failing to indemnify based on it enforcing the Endorsement. Salcedo now recognizes, "this Court's ruling on summary judgment prohibits Salcedo's claims for bad faith due to Colony's threatened failure to refuse to defend JK Farm and its refusal to indemnify JK Farm beyond $25,000.00." (Doc. 123 at 6–7.)

Now, the PAC alleges that Colony violated its "duty to treat settlement proposals with equal consideration." (Doc. 121-1 at 14.)  While this duty can be generally challenged under the ambit of a bad faith claim, it is a distinct duty from the duty to indemnify.  *See*

*Safeway Ins. Co. v. Botma*, No. CIV00-553-PHX RCB, 2003 WL 24100783, at *9 (D. Ariz. Mar. 7, 2003). Additionally, the PAC seeks to interject a whole new host of allegations related to settlement discussion. These sorts of allegations alter the scope of this litigation. Salcedo's claim is predicated on a different set of facts not broached in the Complaint. This much is evident based on the briefing. Salcedo's new allegations invite a flurry of new factual and legal arguments that were seemingly not implicated until the present Motion such as the validity of the underlying *Morris* agreement that. This is telling given the age of this case and the fact that none of these issues were raised in Colony's Motion for Summary Judgment and the associated briefing.

Salcedo attempts to assuage concerns of prejudice based on a January 2025 expert report. This report does not convince the Court that Salcedo should be given leave to pursue an entirely different theory of bad faith at the final hour. It is unclear why Salcedo waited one year to amend his bad faith claim after he had access to the very expert report he argues justifies leave to amend. Additionally, Salcedo attaches seven pages of the fifty-one-page expert report. This limited glance at the expert report does little to show that Colony has been given fair opportunity to prepare for trial.[2]

Accordingly, the Court will not give Salcedo leave to amend his bad faith claim.

**C. Dismissal**

Ultimately, there are no claims remaining in this litigation. Up to this point, and as made clear at the January 5 hearing, the Court's grant of summary judgment obviated Salcedo's claims of breach of contract and producer malpractice. The only remaining claim after that hearing was Salcedo's bad faith claim, which was not specifically challenged up to that point.

While a "court must give notice of its intention to dismiss and afford plaintiffs an opportunity to at least submit a written memorandum in opposition to such motion," *Reed v. Lieurance*, 863 F.3d 1196, 1207 (9th Cir. 2017) (citation modified), such notice is not necessary here—Salcedo is aware that dismissal is warranted. As noted, Salcedo

---

[2] The Court also notes that a Joint Final Pretrial Statement would be due in this case by February 27, 2026—two days from the date of this Order.

acknowledges that this "Court's ruling on summary judgment prohibits Salcedo's claims for bad faith due to Colony's threatened failure to refuse to defend JK Farm and its refusal to indemnify JK Farm beyond $25,000.00." (Doc. 123 at 6–7.)

## IV.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED denying** Salcedo's Motion to File an Amended Complaint (Doc. 121).

**IT IS FURTHER ORDERED dismissing** Salcedo's Complaint (Case 2:23-cv-01548-SMB Doc. 1).

Dated this 25th day of February, 2026.

Honorable Susan M. Brnovich
United States District Judge

- 8 -